IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAN EVOY, as plenary guardian of Jillian Palenik and JOSHUA WILSON, | ) ) ) | |
| Plaintiffs, | ) ) | 04 CV 4211 (Evoy) *consolidated with* |
| v. | ) ) | 04 C 6694 (Wilson) |
| | ) | Judge Matthew F. Kennelly |
| CRST INTERNATIONAL, INC., CRST VAN EXPEDITED, INC., and THOMAS A. LEOPOLD, | ) ) ) | |
| Defendants. | ) | |

DEFENDANTS' RESPONSE TO
PLAINTIFF EVOY'S MOTION TO BAR
CERTAIN OPINIONS OF HARRY W. SCHWARTZ

Defendants, CRST International, Inc., CRST Van Expedited, Inc., and Thomas A. Leopold, hereby respond to plaintiff, Joan Evoy's, motion *in limine* to preclude certain opinions of Harry W. Schwartz, M.D. This motion should be denied. In support, defendants state as follows:

**1. The plaintiff's motion mischaracterizes Dr. Schwartz's testimony and opinion.**

The plaintiff's motion asserts that Dr. Schwartz's opinions are neither reliable nor reliably applied to this case. Essentially, this is an allusion to the standards announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and codified in the revised Fed. R. Evid. 702. The argument is apparently that (1) Schwartz relies on Australian life expectancy tables, (2) these tables cannot be correlated to Jillian Palenik's specific injuries, and (3) this method is therefore "premised on inadmissible and unreliable principles." The motion

3

insinuates, moreover, that these Australian life tables are unreliable because they are "being established."

There are several problems with this argument. First, and most prominently, it mischaracterizes Dr. Schwartz's testimony. The testimony given in the excerpt provided by the plaintiffs can be briefly and accurately summarized thus: Dr. Schwartz notes that the problem with Dr. Adair's estimate of life expectancy is that it relies on data for spinal injuries, not for brain injuries. Dr. Schwartz then goes on to note that the data on life expectancy for brain-injured patients is not yet complete. He notes the existence of tables based on Australian data, but also notes the problems associated with using data from a different country. Only with all these caveats, after repeatedly being pressed by the plaintiff's attorney does the doctor give an estimate of 15 to 20 years' diminished life expectancy, based on "the life tables that *exist* in Australia." (emphasis added).

There are several things to be noted about this testimony. First, the plaintiff's assertion that Dr. Schwartz does not attempt to correlate his estimate to Jillian Palenik's injuries is precisely the reverse of accurate. Indeed, the whole point of these three pages of testimony is Dr. Schwartz's attempt to correlate a life-expectancy estimate to Jillian Palenik's class of injuries, rather than some other class as Dr. Adair did. The only reason the Australian life table is brought up at all is that it is the best reliable data in the field regarding patients with brain injuries. Second, the testimony makes clear that, in context, the Australian life tables referred to are, while preliminary, indeed in existence and available to be used by other practitioners.

Moreover, this is not scientifically unreliable speculation — rather; Dr. Schwartz makes it crystal-clear precisely what uncertainties are inherent in his estimate. He also clarifies that it is in fact an estimate based on best available data. This testimony represents responsible science.

4

The testimony that the plaintiffs would assign to scientific unreliability is merely an expression of scientific uncertainty. As the *Daubert* court noted, "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." 509 U.S. at 590. An expert who failed to convey the uncertainties inherent in his conclusions would, in fact, not be doing his job properly.

**2. The use of life expectancy tables to estimate the loss of life is an extremely well-established and reliable method.**

The plaintiffs assert that "Dr. Schwartz's opinion in this case as to the life expectancy of Jillian Palenik remains premised upon inadmissible and unreliable principles, methods, and data . . ." Motion, p. 2. But this is very far from true. The principles and methods behind the use of life expectancy tables are so well understood and relied upon that they have been enshrined in law. Consider, for example, the Illinois Pattern Jury Instruction 34.04:

> According to a table of mortality in evidence, the life expectancy of a person aged _____ years is _____ years. This figure is not conclusive. It is the average life expectancy of persons who have reached the age of _____. It may be considered by you in connection with other evidence . . . bearing in mind that some persons live longer and some persons less than the average.

IPI 34.04. It is well known that life tables are not predictions, but averages; this instruction explains that fact. Note, further, that the plaintiffs themselves have submitted this instruction to be read by the Court.

In any case, it is quite clear that mortality tables, even Australian mortality tables, are data "of a type reasonably relied upon by experts in the field." Fed. R. Evid. 703. The plaintiff may argue that the Australian table is preliminary and therefore unreliable, but this goes to its weight, not its admissibility. "Vigorous cross-examination, presentation of contrary evidence,

5

and careful instruction on the burden of proof are traditional but appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

*Boatmen's National Bank of Belleville v. Martin*, 223 Ill. App. 3d 740 (5th Dist.1992) cited by plaintiff, is inapposite. In *Boatmen's*, the mortality data sought to be excluded was that pertaining to subarachnoid hemorrhages; the plaintiff there sought exclusion, apparently, because the proffered data was not correlated to the type and location of the hemorrhage. But the opinion does not indicate whether good data existed for different types of hemorrhage; it was entirely possible that the expert in that case could have and should have relied upon the more specific data but did not. Here, however, Dr. Schwartz has applied the best available data; indeed, he testified that the process of gathering detailed mortality data for brain injuries is still in its preliminary stages. Moreover, *Boatmen's* is an Illinois state case, applying state evidentiary law; in Illinois, *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which requires general acceptance, governs admissibility of expert testimony.

Finally, because of *Boatmen's* procedural posture, the Illinois Fifth District Court of Appeals was reviewing the circuit court's decision to exclude this evidence based on an abuse of discretion standard, and notes the lower court's wide discretion; the case thus does not re-open the inquiry as to whether the evidence was in fact unreliable. In short, *Boatmen's* does not stand for the proposition that mortality tables for persons with particular injuries should be excluded; it only stands for the proposition that if the circuit court, after its review, decides to exclude such a table, the Court of Appeals will not stand in the way.

Dr. Schwartz's testimony reveals that his methodology is sound, and is based on reliable principles. The data he relies on—a mortality table—is of a type normally relied on in the field.

6

As such, his testimony is admissible pursuant to Fed. R. Evid. 702 and 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

WHEREFORE, defendants, CRST International, Inc., CRST Van Expedited, Inc., and Thomas A. Leopold, respectfully pray that this court deny the plaintiff's motion *in limine* to preclude certain opinions of Harry W. Schwartz, M.D.

CRST INTERNATIONAL, INC.,
CRST VAN EXPEDITED, INC.
and THOMAS A. LEOPOLD,


By:__s/John_W._Patton,_Jr._____
    John W. Patton, Jr.

John W. Patton, Jr.
Paul S. Steinhofer
PATTON & RYAN, LLC
One IBM Plaza - Suite 2900
Chicago, Illinois 60611
(312) 261-5160

G:\115-049\Motions In Limine\Response to motion to bar Schwartz.doc

7