# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOAN EVOY, as plenary guardian of Jillian Palenik, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 04 C 4211 ) ) |
| CRST VAN EXPEDITED, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff, Joan Evoy, as the parent and plenary guardian of Jillian Palenik, sued CRST Van Expedited for injuries her daughter suffered as a result of a catastrophic traffic accident on April 21, 2004 in LaSalle County, Illinois. After CRST admitted that it was liable for the accident, the issue of damages was tried to a jury, which returned a verdict for Evoy in the amount of $23,564,605.97. CRST has moved for a new trial. For the following reasons, the Court denies CRST's motion.

### Facts

On April 21, 2004, Jillian Palenik and her boyfriend, Joshua Wilson, were traveling on Interstate 80 in LaSalle County, Illinois, when a CRST employed tractor-trailer driver, Thomas Leopold, fell asleep at the wheel, crossed the highway median, and crashed head-on into Palenik's and Wilson's vehicle. Palenik suffered severe brain injuries, and, as a result, she has limited use of her arms and legs and is effectively incapable of communicating with others. Wilson suffered multiple fractures as well as other injuries.

CRST admitted liability, and the parties tried the issue of damages to a jury. Wilson settled his case during trial, and the jury awarded Evoy, as Palenik's guardian, $23,564,605.97: $559,605.97 for past medical expenses; $30,000 for past lost earnings; $14,000,000 for future medical expenses; $450,000 for future lost earnings; $25,000 for past, present, and future disfigurement; $1,000,000 for past loss of a normal life; $5,500,000 for future loss of a normal life; $500,000 for past pain and suffering; and $1,500,000 for future pain and suffering.

## Discussion

Federal Rule of Civil Procedure 59(a) permits a court to grant a motion for a new trial if the jury's verdict was against the clear weight of the evidence or the trial was unfair to the moving party. *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1196 (7th Cir. 1992). In its motion for a new trial, CRST points to eight rulings that it maintains were erroneous and resulted in prejudice warranting a new trial.

### 1. Sallman testimony

CRST first argues that the Court erred by allowing Evoy's accident reconstruction expert, David Sallmann, to testify about the circumstances surrounding the crash. Sallman discussed photographs of the accident scene (which were shown to the jury) and testified about the speed, direction, and weight of the two vehicles in the seconds leading up to the accident. CRST contends, citing *Bullard v. Barnes*, 102 Ill. 2d 505, 519, 468 N.E.2d 1228, 1235 (1984), that this evidence was irrelevant and unfairly prejudicial because CRST admitted liability and did not dispute the nature and extent of Palenik's injuries.

In *Bullard*, the plaintiff's seventeen year-old son died shortly after he was involved in a serious automobile accident, and the defendants admitted liability. *Id.* at 509, 468 N.E.2d at

1231.  The undisputed evidence showed that the decedent, Scott Bullard, was driving southbound on a two lane road, when a truck heading northbound and driven by defendant Bruce Barnes attempted to pass two vehicles.  *Id.*  The passing maneuver forced Bullard to swerve off the road to avoid a collision.  *Id.*  Bullard then lost control of his car as it veered back onto the highway, and he collided with another car driving in the northbound lane.  *Id.*  After the accident, Barnes continued driving northbound without stopping.  *Id.* at 510, 468 N.E.2d at 1231.

The trial court allowed the plaintiff to present, over the defendants' objection, evidence about Barnes's passing maneuver, including the location and speed of the vehicles before the accident; evidence about Barnes's failure to stop; and pictures of the decedent's corpse.  *Bullard v. Barnes*, 112 Ill. App. 3d 384, 392, 445 N.E.2d 485, 491 (1983).  On appeal, the court held that the trial court's rulings constituted reversible error.  *Id.* at 393, 445 N.E.2d at 492.  It said that evidence of the passing maneuver might be relevant in an injury case, "especially when there is ground for believing that the plaintiff is exaggerating his injuries," but that it had no place in a wrongful death case.  *Id.*  With regard to the photographs, the appellate court said that they would usually be relevant to the nature and extent of the injury as well as the resultant pain and suffering, but that they were not relevant in this case, because there was slight evidence that the decedent was alive after the accident and no evidence that he experienced conscious pain.  *Id.*

The Illinois Supreme Court affirmed the appellate court's ruling on the inadmissibility of evidence concerning the passing maneuver and failure to stop but reversed the ruling on the morgue photos.  *Bullard*, 102 Ill. 2d at 519, 468 N.E.2d at 1235.  The court held that the passing maneuver and failure to stop were not relevant to any issue in controversy but that the photographs were relevant to show the decedent's pain and suffering.  *Id.*  The Illinois Supreme

Court subsequently extended *Bullard* by holding that photographs of accident scenes are also relevant to show pain and suffering, even in wrongful death cases. *See Drews v. Gobel Freight Lines, Inc.*, 144 Ill. 2d 84, 101, 578 N.E.2d 970, 978-79 (1991).

The court in *Bullard* did not articulate its reasoning for distinguishing evidence about the passing maneuver and failure to stop from the morgue photos. Nevertheless, it is reasonable to infer – especially given the subsequent ruling in *Drews* – that the court found the morgue photos relevant to pain and suffering because they showed the magnitude of the forces experienced by the decedent. This would also explain why the court excluded evidence about the passing maneuver and failure to stop: they showed nothing about the effect of the crash on the decedent, because the defendant's truck did not make contact with the decedent's vehicle. Indeed, this evidence only tended to show that defendant was negligent and generally unconcerned about the well-being of the decedent, two points that would be irrelevant in a case of admitted liability.

With this distinction in mind, it becomes clear that Sallman's testimony was relevant to show Palenik's pain and suffering. Like the accident scene and morgue photographs in *Bullard* and *Drews*, the speed, direction, and weight of the two vehicles involved in the crash, together with the accident scene photos, all gave the jury a sense of the magnitude of the force that the CRST truck exerted on Palenik's body. In addition, unlike in *Bullard*, where the trial court erroneously admitted evidence about the defendant's passing maneuver and failure to stop – evidence that did not relate to the impact of the crash – the Court did not allow Evoy to present evidence concerning why the CRST truck's driver crossed the center line. In short, Sallman's testimony only concerned evidence relevant to the issue of Palenik's pain and suffering. And though CRST did not dispute that Palenik had been severely injured, it did dispute what Palenik

4

should be awarded for pain and suffering, as well as for other other elements of damages. In sum, the evidence was relevant to disputed issues in the case. Consequently, its admission does not warrant a new trial.

      **2.     Schwartz testimony**

CRST next argues that the Court erred by preventing its expert, Dr. Harry Schwartz, from discussing an Australian life expectancy table, which showed a reduced life expectancy for persons with severe brain injuries. Dr. Schwartz testified at trial that "the American literature, in the past five years shows that at best, even the best brain-injured patients, those with minimal problems compared to Jillian, have a seven-year reduced life expectancy on average." Feb. 24, 2006 Tr. at 609-10. CRST complains that the Court also should have allowed Schwartz to support this testimony by discussing the Australian study.

The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). According to the Seventh Circuit, a trial court, in deciding whether to admit expert testimony, first must determine whether the testimony is reliable by assessing whether the expert is qualified in the relevant field and by examining the expert's methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The Court must then determine if the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue in the case. *Id.* at 721.

The Court excluded testimony about the Australian study because it concerned experiences with brain-injured people in another country that was not shown to be comparable to the experience in this country and because Schwartz, in his deposition, admitted that he had "not

plugged [Palenik's] particular circumstances into a life table to see exactly what it would be." Feb. 13, 2006 Tr. at 31. This suggested to the Court that the Australian life expectancy table would not contribute to a reasoned estimate of Palenik's life expectancy that would assist the jury.

The Court believes that its ruling was correct, but even if we erred by excluding the Australian life expectancy table, the error was harmless. The Australian study's limited relevance, if any, added little to the conclusions that the Court allowed Schwartz to present, specifically, that Palenik's life expectancy likely was reduced by her injury. The error, if one occurred at all, does not warrant a new trial.

      **3.**      **Baade testimony**

CRST next argues that the Court erred by barring defendant's economist, Dr. Robert Baade, from testifying about Palenik's life expectancy. At a hearing that took place during trial outside the presence of the jury, Dr. Baade testified that he calculated Palenik's life expectancy by using a medical study that requires one to assign a particular individual to one of thirty different categories according to any injuries or disabilities from which he or she may suffer. To obtain an average life expectancy using this study, one matches the particular individual's symptoms with those listed in the different categories and obtains a "disability rating." The disability rating is then used to calculate an average life expectancy. Feb. 21, 2006 Tr. at 115-29.

As discussed above, the Federal Rules of Evidence require the Court to determine the reliability of expert testimony by assessing whether the expert is qualified in the relevant field and by examining the expert's methodology. "'Whether a witness is qualified as an expert can

6

only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.'" *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (quoting *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990)).

In *Jones*, the trial court allowed a metallurgist, who had a doctoral degree in Metallurgy and Material Science from MIT, to testify about "the toxicity of manganese fumes and the lung's ability to absorb manganese from those fumes." *Id.* at 723. The Seventh Circuit held that the expert testimony should have been excluded because it involved medical or biological matters outside of the witness's expertise. *Id* at 724.

As in *Jones*, CRST attempted to introduce medical evidence through a witness who had no expertise in the medical sciences. Dr. Baade, who was an economist, not a medical doctor, calculated Palenik's life expectancy by classifying her symptoms, which he learned about by reading deposition testimony. CRST offered no evidence that Dr. Baade was qualified to opine about Palenik's disability rating by making his own determinations about how her symptoms and disabilities should be classified. The evidence was correctly excluded, and the ruling does not warrant a new trial.

### 4. Yarkony testimony

CRST next argues that the Court committed prejudicial error by allowing plaintiff's expert Dr. Yarkony to testify regarding an examination of Palenik that he performed a week before trial and well after the close of discovery. In its motion to bar Yarkony's testimony, however, CRST asked that the Court either bar the testimony *or* allow CRST's expert, Dr. Schwartz, to examine Palenik prior to testifying at trial. *See* Docket No. 119 at 4. The Court

granted CRST's motion by allowing Schwartz to examine Palenik before testifying. As a result, CRST cannot now claim the ruling requires a new trial. *Cf. Ortega Trujillo v. Banco Central Del Ecuador,* 379 F.3d 1298, 1301 (11th Cir. 2004) (holding that plaintiff cannot appeal a trial court's order granting plaintiff's motion for voluntary dismissal).

     **5.    Plaintiff's counsel's suggestion of a specific non-economic award to the jury**

CRST next argues that the Court committed prejudicial error by allowing Evoy's attorney to suggest a specific non-economic damage award to the jury. The question appears to be governed by federal law.[1] *See Waldorf v. Schuta*, 896 F.2d 723, 744 (3d Cir. 1990); *Waldron v. Hardwick*, 406 F.2d 86, 88-89 (7th Cir. 1969). In *Waldorf*, the Third Circuit held that plaintiff's counsel's argument, which requested a specific amount of damages for pain and suffering, was improper and constituted reversible error. 896 F.2d at 744. The court said that "a jury trial should be an appeal to the rational instincts of a jury rather than a masked attempt to 'import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible to evaluation on any such basis.'" *Id.* at 744 (quoting *Botta v. Brunner,* 26 N.J. 82, 100, 138 A.2d 713, 723 (1958)).

The Seventh Circuit, however, has adopted a different course. In *Waldron*, the plaintiff's attorney made a per diem argument – a suggestion that the jury award a certain dollar amount per day for pain and suffering – and the trial court did not advise the jury that the argument could be

---

[1] Intuitively, the substance of an attorney's argument about the amount of damages to award does not strike the Court as the type of procedural issue that should be governed by federal law under the Supreme Court's *Erie* doctrine. *See Erie v. Tompkins*, 304 U.S. 64 (1938). Were Illinois law to apply, however, the result would be the same. *See Grimming v. Alton & S. Ry. Co.*, 204 Ill. App. 3d 961, 979, 562 N.E.2d 1086, 1097 (1990) (attorney may suggest pain and suffering award to the jury); *Warp v. Whitmore*, 123 Ill. App. 2d 157, 164, 260 N.E.2d 45, 49 (1970) (same).

disregarded. 406 F.2d at 88. The Seventh Circuit held that the trial judge committed harmless error, if any, by allowing the argument and said that such an argument certainly would have been permissible if a cautionary instruction had been issued. *Id.* at 88. The Seventh Circuit reaffirmed this holding in *Bell v. City of Milwaukee*, 746 F.2d 1205, 1251 n.58 (7th Cir. 1984).

Though *Waldron* and *Waldorf* seem to indicate a circuit split on the propriety of suggesting awards for non-economic damages, this Court is obliged to follow Seventh Circuit precedent. In light of the cautionary instruction given to the jury,[2] the Court is convinced that Evoy's closing argument did not unfairly prejudice CRST.

### 6. Plaintiff's counsel's argument regarding Palenik's shortened life

CRST next argues that the Court erred by allowing Evoy's attorney to argue that if Palenik had a reduced life expectancy, it was because of the collision with the CRST truck. Def. Mem. at 7-8. CRST maintains that "claims for wrongful shortening of life are really claims for wrongful death" and that Evoy therefore asked the jury for an award that is only allowed under the Illinois Wrongful Death Act. *Id.* at 8.

The portion of Evoy's closing argument to which CRST objects reads as follows:

MR. MARZEWSKI (Evoy): Now, they – CRST – came before you and said Jill's life expectancy, she's not going to live as long as she would have because of this collision. And, therefore, you shouldn't give her as much money? Let's go back to the loss of normal life. What's more precious than life itself? She had a normal life.

MR. PATTON (CRST): Show my objection to normal life. Show my objection to that.

THE COURT: Overruled

---

[2] *See* Feb. 27, 2006 Tr. at 747-48 ("Any figures proposed by counsel in their arguments are not evidence as to the amounts of damages you should award, but rather constitute arguments, which you are free to disregard in your deliberations.")

9

> MR. MARZEWSKI (Evoy): She had a normal life expectancy, and CRST did this to her, and now they're looking for a discount on what they did to her?

Feb. 27, 2006 Tr. at 791-92.

CRST's argument suffers from two different problems. First, Evoy's attorney did not argue that Palenik's life was shortened by the accident; he simply repeated certain contentions that CRST made during its own closing arguments. Second, CRST did not object to Evoy's argument on the ground that it improperly sought damages that are only appropriate in an action for wrongful death. Rather, CRST simply objected, without explanation, to the use of the words "normal life." This was insufficient to preserve the point that CRST now argues. For these reasons, the Court declines to grant a new trial based on the "normal life" argument.

### 7. The verdict form

CRST next argues that the verdict form used by the Court contained too many lines and resulted in an excessive damage award. CRST contends that instead of using two separate lines for past and future amounts, the Court should have used the Illinois Pattern Jury Instructions, which use a single line for past and future amounts. *See* IPI 30.04.01 (loss of normal life); 30.05 (pain and suffering); 30.06 (medical expenses); 30.07 (earnings).

Federal courts are not obliged to use state verdict forms in diversity suits. *See Schultz v. Rice*, 809 F.2d 643, 650-51 (10th Cir. 1986) ("[T]he district court was not required to follow the Kansas guidelines for verdict forms because federal, not state law, governs the submission of special verdicts or interrogatories."). Moreover, Rule 49(a) of the Federal Rules of Civil Procedure says, "The Court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." In this case, the Court, pursuant to Rule 49(a),

required the jury to make nine factual findings on various damage amounts. CRST has not cited, and the Court has not found, any case holding that such a verdict form is unfairly prejudicial to defendants. And we fail to see how CRST was prejudiced in any event. The verdict form was not unfair and does not require a new trial.

### 8. Excessive verdict

CRST next argues that the verdict should be vacated as excessive because it exceeds the range of appropriate compensation. In evaluating the size of a jury a verdict in a diversity case, the Court applies state law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 436-37 (1996).

The Illinois Supreme Court recently discussed the proper method for reviewing jury verdicts in *Richardson v. Champan*, 175 Ill. 2d 98, 113, 676 N.E.2d 621, 628 (1997). In *Richardson*, plaintiffs Keva Richardson and Ann McGregor sued the defendants for injuries they suffered in an automobile accident. *Id.* at 113-15, 676 N.E.2d at 628-29. Richardson was rendered quadriplegic, and McGregor suffered lacerations to her face. *Id.* at 111, 115, 676 N.E.2d at 627, 629.

The court held that Richardson's award for medical expenses was excessive because it was $1,500,000 dollars more than any expert estimated for those costs, but it upheld the remainder of Richardson's award because it could not say that the award was "the result of passion or prejudice, 'shock[ed] the conscience,' or lack[ed] support in the evidence." *Id.* at 113, 676 N.E.2d at 628. The court also reduced McGregor's $100,000 award for pain and suffering because she incurred only "a laceration on her forehead, which left only a slight scar." *Id.* at 115, 676 N.E.2d at 629. It also noted that the jury had only awarded McGregor $2,000 in

11

economic damages and nothing for disfigurement. *Id.*

The court, in reviewing these awards, said "An award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Id.* at 113, 676 N.E.2d at 628. The court also recognized that Illinois courts do not traditionally compare a particular jury verdict with those rendered in other cases to determine whether a verdict is excessive. *Id.* at 114, 676 N.E.2d at 628.

CRST maintains that because Illinois law requires judges to determine whether a damages award "falls outside the range of fair and reasonable compensation" without comparing the award with other cases, the review is so arbitrary that it unconstitutionally deprives an individual of property without due process of law. The Court disagrees. The Illinois Supreme Court's instructions on reviewing verdicts for excessiveness – though they speak of a fairly indeterminate range of reasonableness – are not arbitrary. They simply require the Court to determine whether the award finds support in the evidence and whether the non-economic award shocks the conscience, something that – as in *Richardson* – might occur when a jury's non-economic damages award grossly exceeds its economic award or when the evidence shows that a plaintiff's injury was not particularly serious or debilitating.[3] Indeed, when the *Richardson* court actually reviewed the verdicts involved in that case, it did not come up with an actual monetary range of reasonable compensation. In fact, it did not discuss whether the award fell outside the

---

[3] This interpretation of *Richardson* finds support in *Carroll v. Preston Trucking Co., Inc.*, 349 Ill. App. 3d 562, 572, 812 N.E.2d 431, 440 (2004), in which the court stated that a court, in reviewing a verdict for excessiveness, may take into account "(1) the extent and permanency of the injury; (2) the possibility of future deterioration; (3) medical expenses; and (4) restrictions placed on the plaintiff as a result of the injury."

12

range of reasonable compensation at all. Rather, it focused on whether the award was supported by the evidence, was a result of passion or prejudice, or shocked the conscience. *Id.* at 114, 676 N.E.2d at 628. Given these instructions by the Illinois Supreme Court, the Court's review of a jury verdict in this case is not arbitrary.

Evoy's award included just over $15,000,000 worth of economic damages and just under $9,000,000 worth of non-economic damages. The record supported the economic damages award. Evoy's expert, Dr. Phillip Rushing, testified that Palenik's future medical expenses alone could cost anywhere from $14,200,000 to $19,800,000. In addition, the jury's non-economic damages award, which was a little under sixty percent of the economic award, was not so excessive that it shocks the judicial conscience. Evidence presented at trial showed that due to a traumatic brain injury, Palenik has lost control of her arms and legs, is completely incapable of caring for herself, and is effectively unable to communicate with her family. Evidence also showed that her disability is unlikely to improve. Thus, given the severe nature of her disability and the substantial economic damages award, the non-economic award was not excessive.

CRST also argues that the award was excessive because Evoy's attorney and Evoy's witness injected passion or prejudice into the case by using the words "smash" and "smashed" on three occasions when referring to the accident. First, Palenik's brother testified, without objection, that he saw "exactly what you would expect to see from someone that just got smashed by a semi." Feb. 22, 2006 Tr. at 362. Second, Evoy's attorney asked CRST's expert, over CRST's objection which the Court overruled, whether he understood "that Jill suffered a severe traumatic brain injury where a CRST truck smashed into her." Feb. 24, 2006 Tr. at 624-25. Third, Evoy's attorney in his closing argument stated, without objection, that "[w]e saw

13

photographs regarding the horrific impact of the CRST truck smashing into the front side of the passenger van." Feb. 27, 2006 Tr. at 751.

Because CRST did not object to the use of the word "smash" in the first and third instances discussed above, it cannot claim now that they contributed to an unfair jury award. *See* Fed. R. Evid. 103(a)(1). With respect to the second instance, the Court concludes that under Illinois law, a single use of the word "smashed" during the course of a five day trial – even if it injected some passion into the case – is grossly insufficient to overturn a considered jury award.

Finally, CRST argues that the verdict was excessive because the jury awarded Evoy $6,500,000 for Palenik's loss of a normal life, even though Palenik is largely incapable of appreciating this loss. This argument was squarely rejected by the Illinois Appellate Court in *Holston v. Sisters of The Third Order of St. Francis*, 247 Ill. App. 3d 985, 1005, 618 N.E.2d 334, 347 (1993), *aff'd*, 165 Ill. 2d 150, 650 N.E.2d 985 (1995). We too reject this argument.

## Conclusion

For the reasons stated above, the Court denies defendant's motion for a new trial [docket no. 141]. The Court also notes that defendant prematurely (in advance of the filing of a notice of appeal) deposited proposed supersedeas bonds with the Clerk. *See* Fed. R. Civ. P. 62(d). Any objection by plaintiff to the sufficiency of the bonds must be made by no later than May 4, 2006, or the Court will enter an order approving them.

                                                                MATTHEW F. KENNELLY
                                                                United States District Judge

Date: April 28, 2006